EXHIBIT C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
TAL PROPERTIES OF POMONA, LLC AND AVRHOM : 
MANES, :
                                           :
                     Plaintiffs, :
                                           :
                 -against- :    Docket No.: 19-cv-06838 (PMH)
                                           :
VILLAGE OF POMONA, BRETT YAGEL, individually :
and in his official capacity as Mayor of the Village Of :
Pomona, DORIS ULMAN, individually and in her official :
capacity as Attorney for the village of Pomona, :
LOUIS ZUMMO, individually and in his official capacity :
as Building Inspector for the Village Of Pomona, :
NOREEN SHEA, individually and in her official capacity :
as Deputy Village Clerk for the Village Of Pomona, :
FRANCIS ARSA-ARTHA individually and in her official :
capacity as Clerk Treasurer for the Village Of Pomona, :
CHRISTOPHER RILEY, individually and in his official :
capacity as Special Prosecutor for the Village Of Pomona; :
JOSEPH CORLESS, individually and in his official :
capacity as Engineer for the Village Of Pomona LEON :
HARRIS, individually and in his official capacity as :
Deputy Mayor for the Village Of Pomona, IAN BANKS, :
individually and in his official capacities as Trustee, and :
Current Mayor for the Village of Pomona, and :
JOHN DOES and JANE DOES, :
                                           :
                       Defendants. :
------------------------------------------------------------------- x


## MEMORANDUM OF LAW IN SUPPORT OF INDIVIDUAL DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT


Wilson, Elser, Moskowitz, Edelman & Dicker LLP
1133 Westchester Avenue
White Plains, New York 10604
(914) 323-7000

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................... ii

Preliminary Statement ..........................................................................................................1

Procedural History and Background Facts ............................................................................2

Argument ..............................................................................................................................6

    I.    Plaintiffs' Claims Are Barred by the Doctrine of Res Judicata ..............................6

    II.    Plaintiffs Fail to State an Equal Protection Claim .................................................10

        A.    The Second Amended Complaint Fails to State a Selective Enforcement Claim ....................................................................................10

        B.    Plaintiffs Cannot Proceed under *Pyke v. Cuomo* ......................................13

    III.    Plaintiffs' Claims Based on the Denial of a Grading Permit Are Not Ripe ..........17

    IV.    Plaintiffs Fail to Allege a Substantial Burden to their Exercise of Religion .........17

    V.    Plaintiffs Fail to State a Claim under RLUIPA .....................................................21

        A.    Plaintiffs' Have Not Alleged a "Substantial Burden" under RLUIPA ......21

        B.    Plaintiffs Fail to State a Claim under RLUIPA § 2000cc(b) ....................21

    VI.    The Court Should Dismiss the Tortious Interference Claim .................................22

    VII.    Plaintiffs Fail to State an Unconstitutional Conditions Claim...............................23

    VIII.    The SAC Fails to Allege Personal Involvement by Fran Arsa Artha or Leon Harris..................................................................................................................24

    VIII.    The Individual Defendants Are Entitled to Qualified Immunity ..........................25

Conclusion .........................................................................................................................25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Altman v. Bedford Cent. Sch. Dist.*,
  245 F.3d 49 (2d. Cir. 2001) ..................................................................................18

*Amaker v. Lee*,
  2019 U.S. Dist. LEXIS 75146 (S.D.N.Y. May 3, 2019) .........................................24

*Amaker v. Schiraldi*,
  2017 U.S. Dist. LEXIS 166294 (E.D.N.Y. Sept. 29, 2017) ....................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)...................................................................................6, 12, 13

*Barua v. City of New York*,
  2016 U.S. Dist. LEXIS 179610 (Dec. 28, 2016) ....................................................14

*Bolden v. Village of Monticello*,
  344 F. Supp.2d 407 (S.D.N.Y. 2004) .....................................................................25

*Buckner v. Cnty. of Sullivan*,
  2015 U.S. Dist. LEXIS 12642 (S.D.N.Y. 2015).....................................................16

*Cent. UTA of Monsey v. Village of Airmont*,
  2020 U.S. Dist. LEXIS 13154 (S.D.N.Y. Jan 23, 2020) .........................................17

*Chabad Lubavitch of Litchfield Cty., Inc. v. Borough of Litchfield*,
  2016 U.S. Dist. LEXIS 10491 (D. Conn. Jan. 27, 2016).........................................22

*Congregation Rabbinical College of Tartikov, Inc v. Village of Pomona*,
  945 F.3d 83 (2d Cir. 2019) .......................................................................................5

*Danahy v. Buscaglia*,
  134 F.3d 1185 (2d Cir. 1998) .................................................................................25

*Dizak v. Hawks*,
  2015 U.S. Dist. LEXIS 176283 (N.D.N.Y. Dec. 9, 2015).......................................19

*Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*,
  600 F.3d 190 (2d Cir. 2010) .....................................................................................8

ii

*Federated Dep't Stores v. Moitie,*
  452 U.S. 394 (1981) ...................................................................................................6, 7

*Friedman v. Coldwater Creek, Inc.,*
  551 F. Supp. 2d 164 (S.D.N.Y. 2008) ...........................................................................23

*Golodner v. Martinez,*
  2017 U.S. Dist. LEXIS 210409 (D. Conn. Dec. 21, 2017) ............................................14

*Hang Hsin v. City of New York,*
  779 Fed. Appx. 12 (2d Cir. June 13, 2019) ...................................................................15

*Hayden v. Paterson,*
  594 F.3d 150 (2d Cir. 2010) ....................................................................................15, 17

*Hu v. City of New York,*
  927 F.3d 81 (2d Cir. 2019) ......................................................................................10, 15

*Indig v. Pomona,*
  2019 U.S. Dist. LEXIS 200934 (2019 Nov. 18, 2019) ...............................................5, 20

*Koontz v. St. Johns River Water Mgmt. Dist.,*
  570 U.S. 595 (2013) ........................................................................................................23

*LaTrieste Restaurant v. Village of Port Chester,*
  188 F.3d 65 (2d Cir. 1999) .............................................................................................10

*LeClair v. Saunders,*
  627 F.2d 606 (2d Cir. 1980) ...........................................................................................10

*Levantino v. Skala,*
  56 F. Supp. 3d 191 (E.D.N.Y. 2014) ..............................................................................24

*Lieberman v. City of Rochester,*
  2011 U.S. Dist. LEXIS 46295 (S.D.N.Y. Apr. 29, 2011) ...............................................11

*Lisa's Party City, Inc. v. Town of Henrietta,*
  185 F.3d 12 (2d Cir. 1999) .............................................................................................10

*Malley v. Briggs,*
  475 U.S. 335 (1986) ........................................................................................................25

*McCarroll v. United States Fed. Bureau of Prisons,*
  2012 U.S. Dist. LEXIS 128394 (D. Conn. Sep. 10, 2012) ..............................................7

iii

*McLeod v. Williams,*
    2020 U.S. Dist. LEXIS 85944 (S.D.N.Y. May 15, 2020) .................................................19, 21

*Missere v. Gross,*
    826 F. Supp. 2d 542 (S.D.N.Y. 2011) ...................................................................................10

*Monahan v. New York City Dep't of Corrections,*
    214 F.3d 275 (2d Cir. 2000) ....................................................................................................7

*Muhammad v. Maduekwe,*
    2016 U.S. Dist. LEXIS 25826 (S.D.N.Y. Feb. 29, 2016).......................................................14

*Naumovski v. Norris,*
    934 F.3d 200 (2d Cir. 2019) ..................................................................................................16

*New York Pet Welfare Assn. v. City of New York,*
    143 F. Supp. 3d 50 (E.D.N.Y. 2015) .....................................................................................10

*Newdow v. Peterson,*
    753 F.3d 105 (2d Cir. 2014) ..................................................................................................18

*Newdow v. United States,*
    2013 U.S. Dist. LEXIS 128367 (S.D.N.Y. Sept. 9, 2013).......................................................18

*Norman v. Niagara Mohawk Power Corp.,*
    873 F.2d 634 (2d Cir. 1989) ....................................................................................................8

*Panzella v. City of Newburgh,*
    231 F. Supp. 3d 1 (S.D.N.Y. 2017) .......................................................................................13

*Penadex v. Republic of Ecuador,*
    2019 U.S. Dist. LEXIS 133683 (S.D.N.Y. Aug. 8, 2019).........................................................6

*Pyke v. Cuomo,*
    258 F.3d 107 (2d Cir. 2001) ......................................................................................13, 14, 15

*Rodriguez v. Clinton,*
    357 Fed. Appx. 355 (2d Cir. 2009).........................................................................................13

*Rodriguez v. Margotta,*
    71 F. Supp. 2d 289 (S.D.N.Y. 1999) .....................................................................................11

*Roman Catholic Diocese of Rockville Ctr. v. Inc. Vill. of Old Westbury,*
    2012 U.S. Dist. LEXIS 56694 (E.D.N.Y. Apr. 23, 2012) ......................................................21

iv

*Roman v. Velleca*,
  2012 U.S. Dist. LEXIS 136946 (D. Conn. Sept. 25, 2012) ......................................................16

*Rosario v. Town of Mt. Kisco*,
  2018 U.S. Dist. LEXIS 80843 (S.D.N.Y. May 11, 2018) .........................................................15

*Salahuddin v. Jones*,
  992 F.2d 447 (2d Cir. 1993) ........................................................................................................6

*Saud v. Bank of New York*,
  929 F.2d 916 (2d Cir. 1991) ........................................................................................................8

*Schwasnick v. Fields*,
  2010 U.S. Dist. LEXIS 65958 (E.D.N.Y. Jun. 30, 2010) .......................................................14

*Skoros v. City of New York*,
  437 F.3d 1 (2d Cir. 2006) ...............................................................................................17, 18, 20

*Snyder v. Pugliese*,
  144 Fed. Appx. 174 (2d Cir. Aug. 15, 2015) ...........................................................................13

*Snyder v. Yonkers Pub. Sch. Dist.*,
  315 F. Supp. 2d 499 (S.D.N.Y. 2004) .........................................................................................9

*Sweater Bee by Banff, Ltd. v. Manhattan Indus.*,
  754 F.2d 457 (2d Cir. 1985) ........................................................................................................7

*Tarantino v. City of Hornell*,
  615 F. Supp. 2d 102 (W.D.N.Y. 2009) ......................................................................................10

*Teltronics Servs., Inc v. LM Ericsson Telecomm., Inc.*,
  642 F.2d 31 (2d Cir. 1981) ..........................................................................................................7

*Weinberg v. Vill. of Clayton*,
  2018 U.S. Dist. LEXIS 187640 (N.D.N.Y. Nov. 2, 2018) .......................................................16

*White Plains Coat & Apron Co. v. Cintas Corp.*,
  460 F.3d 281 (2d Cir. 2006) ......................................................................................................23

*Wright v. Smith*,
  21 F.3d 496 (2d Cir. 1994) ........................................................................................................24

**Statutes**

42 U.S.C. § 1983 ...............................................................................................................8, 10

42 U.S.C. § 2000cc ..................................................................................................6

42 U.S.C. § 2000cc(a) ............................................................................................21

42 U.S.C. § 2000cc(b) .......................................................................................21, 22

42 U.S.C. § 2000cc-5(5) ........................................................................................22

42 U.S.C. § 3604(A) ................................................................................................5

42 U.S.C. § 3617 .....................................................................................................5

42 U.S.C. § 604(B) ..................................................................................................5

Education Law §§ 7209(1)-(2) ...............................................................................12

Village Code § 119-1 ..............................................................................................12

Village Code § 119-2(A) .........................................................................................12

Village Code § 119-4 ..............................................................................................17

Village Code § 119-5 ..............................................................................................12

Village Code § 130-10.G ........................................................................................19

**Rules**

Fed. R. Civ. P. 12(b)(6) ....................................................................................6, 7, 25

Fed. R. Civ. P. 41(b) ................................................................................................7

Defendants Brett Yagel, Doris Ulman, Louis Zummo, Leon Harris, and Fran Arsa Artha (collectively, the "Individual Defendants"), respectfully submit this memorandum of law in support of their motion to dismiss the Second Amended Complaint ("SAC") filed by plaintiffs TAL Properties of Pomona, LLC ("TAL"), and Avrohom Manes (collectively, "Plaintiffs").

## Preliminary Statement

This action is barred by the doctrine of *res judicata*. Plaintiffs previously sued the Village for the same conduct alleged in the instant lawsuit. That action was dismissed in January 2018 and Plaintiffs' subsequent motion to reopen the case was denied in July 2019. Plaintiffs did not perfect an appeal from either the order and judgment of dismissal or the denial of the motion to reopen. Instead, Plaintiffs filed a new lawsuit based on the same underlying transactions. The judgment of dismissal in the prior action is a final judgment on the merits that bars this action in its entirety. All of the claims in this action either were raised, or could have been raised, in the prior action. *Res judicata* prevents Plaintiffs from forcing the Village into never-ending litigation merely by hiring new counsel and redrafting their complaint.

As in the prior action, Plaintiff now allege that the defendants: (1) delayed the issuance of a certificate of occupancy (CO) for their property; (2) requested that Plaintiffs pay approximately $6,300 in outstanding fees on the property, which Plaintiffs ultimately did not pay; (3) imposed conditions to obtain a grading permit which conditions were not imposed on other land owners who, unlike Manes, were not Orthodox Jewish; and (4) requested that Plaintiffs acknowledge that a road accessing Plaintiffs' property was not a Village road, allegedly in exchange for keeping the CO. Plaintiffs also allege that in December 2017, Defendant Zummo issued a stop work order for a project involving Manes's driveway while not issuing a violation to a non-Orthodox Jewish neighbor who allegedly erected pillars in violation of the Village Code. Thus, Plaintiffs allege

1

selective enforcement of the Village Code on the basis of religion.  As in the prior action, Plaintiffs allege that they were damaged because the sale of their property was delayed and Plaintiffs received lower profits from their investments in residential properties in Pomona.  Because Plaintiffs already adjudicated their claims against the Village on the merits, the claims here are barred.  The *res judicata* bar extends to new theories not explicitly raised in the prior action (*e.g.* Plaintiffs' Fair Housing Act, RLUIPA, unconstitutional conditions, and tortious interference claims) because the claims are all based on the same underlying transactions and could have been asserted in the prior suit.

Even if Plaintiffs' suit was not barred by res judicata, it must still be dismissed because Plaintiffs fail to state a claim against the Individual Defendants.  Plaintiffs' claim for selective enforcement of the Village Code fails because they fail to allege the similar comparator and discriminatory animus elements of their claims.  Plaintiffs' Free Exercise claims fail because Plaintiffs fail to allege a substantial burden on their religious exercise.  Plaintiffs allege lost profits; they do not allege any interference with religious practices.  For similar reasons, Plaintiffs' claims under the Religious Land Use and Institutionalized Persons Act ("RLUIPA") also fail.  This case is not about religious land use and Plaintiffs' fail to allege any burden on their religious practice.  Finally, there are no allegations of personal involvement by defendants Fran Arsa Artha or Leon Harris in any of the alleged incidents.  Thus, all claims against these defendants must be dismissed.

### Procedural History and Background Facts

On March 16, 2017, Plaintiffs initiated suit against the Village and various individual defendants concerning many of the same incidents about which Plaintiffs now complain (the "Prior Action,").  After the Prior Action was removed from state to federal court (Dkt. 17-cv-2928 (CS)

2

(S.D.N.Y.)), Plaintiffs were permitted to amend the complaint twice.[1]  Ex. B; Ex. E at 6-7.  In the Prior Action, Plaintiffs alleged violations of the Equal Protection Clause and the Free Exercise Clause based on the same conduct alleged in this action.  Ex. B.  The defendants moved to dismiss the Prior Action with prejudice and that motion was granted on January 10, 2018.  Exs. C, D, E, F.  The district court denied any further amendment given that Plaintiffs "have already amended twice after having the benefit of two pre-motion letters from defendants . . . and my observations during the August 25, 2017 conference[.]"  Ex. E at 19.  Accordingly, the Prior Action was dismissed with prejudice and Plaintiffs did not appeal.  Instead, Plaintiffs filed a motion to reopen the Prior Action pursuant to Rule 60(b).  That motion was denied on July 22, 2019, because "[n]one of the newly discovered evidence cures the deficiencies that resulted in dismissal of the SAC."[2]  Ex. H at *19; *Id*. at *21.  Plaintiffs initially filed a notice of appeal from the July 22, 2019 denial of the motion to reopen, but the appeal was dismissed when Plaintiffs failed to file a brief.  Ex. I.

On July 23, 2019, after their motion to reopen the Prior Action was denied, Plaintiffs filed the instant lawsuit, naming Yagel, Ulman, and the Village as defendants and asserting the same claims for Equal Protection and Free Exercise violations as well as two new state law claims.  DE #1.  On November 21, 2019, the defendants moved to dismiss on numerous grounds, including *res judicata*.  DE #33-35.  In response, Plaintiffs amended the complaint, adding seven defendants and claims under the Fair Housing Act, RLUIPA, and tortious interference.  DE#54.  Defendants again notified Plaintiffs of their intent to move to dismiss.  DE #72.  In response, Plaintiffs (represented by their fourth set of counsel in this action) filed a Second Amended Complaint.  Ex. A.

---

[1] Plaintiffs' original complaint named the Village, Brett Yagel, Doris Ulman, Ian Banks, Alma Sanders Roman, Nicholas Wilson, Louis Zummo, and P. Joseph Corless as defendants.  However, Plaintiffs subsequently dropped all defendants in the Prior Action other than Yagel, Ulman, and the Village.  Ex. H at *1, n.1.

[2] The defendants disputed whether the evidence relied on by plaintiffs was actually "newly discovered."  The court, however, did not decide this issue. Ex. H at *19.

3

As alleged in the SAC, prior to December 2015, the owner of the residential property at 22 High Mountain Road, Village of Pomona, New York ("22 High Mountain") owed $6,379.34 in connection with that property to the Village, and the developer's bond lapsed.  Ex. A ¶¶64, 67.  In late 2015, Manes bought 22 High Mountain and other subdivided properties at a foreclosure sale.  Ex. A ¶¶57, 68.  Manes is an Orthodox Jew.  Ex. A ¶2.  In January 2016, Plaintiffs made repairs to 22 High Mountain, and Village Building Inspector Zummo ("Zummo") allegedly told Plaintiffs that the repairs satisfied applicable codes and that a CO should be issued.  Ex. A ¶59.  It is alleged that the issuance of the CO was delayed due to the unpaid debt on the property.  Ex. A ¶¶60-67.

In summer 2016, Plaintiffs sought to "grade out steep slopes" at the rear of 22 High Mountain, and Plaintiffs' engineer and Village Engineer Corless worked together to develop a grading plan to address the steep slopes.  Ex. A. ¶75; DE #1 ¶82.  However, Yagel and Ulman allegedly directed Corless to impose conditions on the plan to grade out the steep slopes, including requiring Plaintiffs to post a bond to insure they did not damage their neighbor's property, demonstrate that the original surveyor of the land had authorized plaintiffs to use his work, test the compressed fill that they used for grading, and pay a fee.  Ex. A ¶¶76-80.  Plaintiffs "agreed to" comply with the conditions, but the permit was not issued.  Ex. A ¶81.

Prior to fall 2016, and despite Plaintiffs' failure to pay the $6,300 debt, the Village issued a CO to Plaintiffs.  Ex. A ¶86.  In late fall 2016, Plaintiffs sold 22 High Mountain.  *Id*.  Afterward, the Village allegedly requested that Plaintiffs sign an agreement acknowledging that the road to 22 High Mountain was not a Village road and its maintenance was the owner's sole responsibility.  Ex. A ¶¶93, 95.  Plaintiffs initiated a separate lawsuit concerning the roads issue.  Ex. A ¶98.

Plaintiffs also own other undeveloped properties ("the Subdivided Properties") accessed by the same road, which properties the Village had allegedly "approved for residential use" prior

to Plaintiffs' purchase.  Ex. A ¶¶88-89.  The SAC includes a vague and conclusory allegation that Defendants denied Plaintiffs unspecified permits at unspecified times related to the Subdivided Properties and that Defendants have "made it impossible for [Plaintiffs] to exercise their property rights by improving and/or selling the Subdivided Properties[.]"  Ex. A ¶¶91, 113.  At an unspecified time, the Village asked Plaintiffs to pay for the cost of snow removal on the road to the subdivision; the supporting documentation was not itemized.  Ex. A ¶¶108-111.

Prior to December 2017, Zummo issued a permit for "a project on the driveway at Plaintiff Manes' home."  Ex. A ¶117.  In mid-December 2017, Zummo issued a stop work order ("SWO") to Plaintiffs regarding this project.  *Id.*  Plaintiffs allege that Zummo acknowledged that Yagel directed him to issue the SWO, at the behest of a non-Jewish neighbor of Manes.  Ex. A ¶¶120-21.  At some point, the same neighbor built two pillars with his name and address on them at the entrance to a road which leads to his neighbor's home, allegedly in violation of the Village Code.  Ex. A ¶122.  It is alleged that the Village also refused to issue a property tax refund to Plaintiffs, contending that a reduced assessment on Plaintiffs' property applied only prospectively.  Ex. A ¶125. *See, e.g.*, Ex A ¶¶12-13, 38, 39, 234-242.  The SAC also contains many allegations regarding unrelated lawsuits against the Village.[3]

The SAC asserts nine causes of action: (i) Violation of the Equal Protection Clause, ¶¶306-311; (ii) Violation of the Free Exercise Clause, ¶¶312-316; (iii) Violation of the Fair Housing Act, 42 U.S.C. §§ 3604(A), 604(B), and 3617, Ex A ¶¶317-322; (iv) four claims under RLUIPA, 42

---

[3] The SAC references unrelated lawsuits, including: (1) *Indig v. Pomona*, docket number 7:18-cv-10204-PM, pending before this court; (2) Shea's New York State Division of Human Rights complaint and subsequent federal lawsuit against the Village; and (3) prior litigation against the Village in *Congregation Rabbinical College of Tartikov, Inc v. Village of Pomona*, 945 F.3d 83 (2d Cir. 2019).  In *Tartikov*, a rabbinical college, reportedly seeking to develop property with a school and on-site housing for hundreds, if not thousands, of students and their families, challenged four Village ordinances adopted between 2001 and 2007.  The Second Circuit concluded that there was sufficient evidence that the Wetlands and Dormitory ordinances were motivated by discriminatory intent, but held that there was insufficient evidence to conclude that the other two ordinances were motivated by discriminatory intent.  The instant case has nothing to do with the adoption of allegedly discriminatory ordinances, or with high density student housing.

5

U.S.C. § 2000cc, ¶¶323-338; (v) tortious interference, ¶¶339-343; and (ix) imposition of unconstitutional conditions in violation of due process, equal protection, and the Takings Clause, ¶¶344-349.  The Individual Defendants move for dismissal of the SAC.

**Argument**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal cites omitted).  Mere conclusions or formulaic recitations of the elements of a claim in the complaint are not presumed to be true and will not suffice to shield the complaint from dismissal.  *Id*. at 678.  Indeed, under F.R.C.P. 12(b)(6), "a plaintiff armed with nothing more than conclusions" should not be allowed to proceed to discovery.  *Id*. at 679.  The defendant can also move to dismiss a complaint under F.R.C.P. 12(b)(6) on res judicata grounds. *Penadex v. Republic of Ecuador*, 2019 U.S. Dist. LEXIS 133683 (S.D.N.Y. Aug. 8, 2019); *see also Salahuddin v. Jones*, 992 F.2d 447, 449 (2d Cir. 1993).

## I.     Plaintiffs' Claims Are Barred by the Doctrine of *Res Judicata*

Plaintiffs' claims are barred by the doctrine of *res judicata* because the district court's dismissal of the Prior Action constitutes a final judgment on the merits.  Under the doctrine of *res judicata*, "[a] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."  *Federated Dep't Stores v. Moitie*, 452 U.S. 394, 398 (1981).  As explained by the Supreme Court:

> The doctrine of res judicata serves vital public interests . . . "[the] doctrine of *res judicata* is not a mere matter of practice or procedure inherited from a more technical time than ours. It is a rule of fundamental and substantial justice, 'of public policy and of private peace,' which should be cordially regarded and enforced by the courts . . . ." . . . The language used by this Court half a century ago is even more compelling in view of today's crowded dockets . . .

6

*Id*. at 399 (quoting *Hart Steel Co.* v. *Railroad Supply Co.*, 244 U.S. 294, 299 (1917)).  Thus, a court must give preclusive effect to a prior judgment if: "1) the previous action involved an adjudication on the merits; 2) the previous action involved the plaintiffs or those in privity with them; and 3) the claims asserted in the subsequent action were, or could have been, raised in the prior action."  *Monahan v. New York City Dep't of Corrections*, 214 F.3d 275, 285 (2d Cir. 2000).

The judgement of dismissal in the Prior Action is an adjudication "on the merits."  It is well-established that "'judgments under rule 12(b)(6) are on the merits, with *res judicata* effects.'"  *Sweater Bee by Banff, Ltd. V. Manhattan Indus.*, 754 F.2d 457, 462 (2d Cir. 1985) (quoting *Teltronics Servs., Inc v. LM Ericsson Telecomm., Inc.*, 642 F.2d 31, 34 (2d Cir. 1981); *see also Federated Dep't Stores*, 452 U.S. at 399 n.3; Fed. R. Civ. P. 41(b) ("Unless the court in its order for dismissal otherwise specifies" a 12(b)(6) dismissal "operates as an adjudication upon the merits").  Where an action has been dismissed for failure to state a claim, the fact that a subsequent complaint by new counsel may be "more detailed and generally drafted in a more sophisticated fashion" does not overcome the res judicata effect of the prior dismissal.  *Teltronics Servs., Inc.*, 642 F.2d at 35, n.6.  Indeed, the Second Circuit "has taken a dim view of a plaintiff's efforts to avoid res judicata of a prior judgment of dismissal on the ground that it did not adequately present the case initially." *Id*. at 35.  Thus, the order and judgment dismissing the Prior Action under Rule 12(b)(6) is an adjudication on the merits with *res judicata* effects.

The second element is also established, as the plaintiffs in the two actions are identical. *See* Ex. E at 2-3 (plaintiffs in the prior action were TAL Properties and Avrohom Manes). Additionally, all of the Individual Defendants were either named defendants, or were in privity with the named defendants, in the Prior Action.  "Courts have long recognized that privity exists between co-employees or employees and their employers for res judicata purposes." *McCarroll*

*v. United States Fed. Bureau of Prisons*, 2012 U.S. Dist. LEXIS 128394, at \*25 (D. Conn. Sep. 10, 2012) (collecting cases).

The final element of *res judicata* is also met because Plaintiffs raised, or could have raised, their current claims in the Prior Action.  "Neither the doctrine of *res judicata* nor the doctrine of collateral estoppel allows plaintiff to bring countless actions, one at a time, until plaintiff happens upon a legal theory that achieves the desired result."  *Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 199 (2d Cir. 2010) (after adjudication of claims under certain provisions of insurance contract, plaintiff's complaint relying on different provisions of insurance contract was barred by res judicata).  *See Saud v. Bank of New York*, 929 F.2d 916, 919 (2d Cir. 1991) ("it is the facts surrounding the transaction . . . which operate to constitute the cause of action [for *res judicata* purposes], not the legal theory upon which a litigant relies.");  *Norman v. Niagara Mohawk Power Corp.*, 873 F.2d 634 (2d Cir. 1989) (dismissal of whistleblower's prior civil rights action had res judicata effect on subsequent RICO action despite allegations of subsequent events because "once all the fat is trimmed away, we are left with little more than the allegations" of retaliation).

In the Prior Action, Plaintiffs raised Equal Protection and Free Exercise claims under § 1983, just as they have here, and cited the exact same incidents of alleged discrimination, namely the delay of the CO, the imposition of the grading permit requirements, the request for an agreement with respect to the roads and the resulting sale of the property at alleged less-than-expected profit.  *Compare* Ex. A at ¶¶ 57-68 (CO), ¶¶74, 75-83 (grading), ¶¶93-105 (road) with Ex. B ¶¶ 8-16 (CO), ¶¶23-33 (grading), ¶¶35-40 (road).  Plaintiffs' Equal Protection and Free Exercise claims in this action are based on these same incidents.

Additionally, all of Plaintiffs' new statutory, constitutional, and state law claims are based on the same allegedly discriminatory transactions as the Prior Action.  *See e.g.,* Ex. A at ¶318 (in

support of FHA claim, Plaintiffs allege "Defendants have discriminated on the basis of Plaintiffs' religion against Plaintiffs with unjustified delays, imposition of discriminatory conditions, and refusal to provide building permits, and by making housing within Pomona unavailable to Orthodox Jews"); ¶328 (in support of RLUIPA claims: "by delaying and denying Certificates of Occupancy and other preconditions for residences to be occupied by Orthodox Jews"); ¶332 (in support of RLUIPA claim: "by imposing on Manes and Orthodox Jewish purchasers and owners of property in Pomona disparate and costly conditions that were not imposed on non-Orthodox Jewish owners of property in Pomona) ¶341 (tortious interference claim based on "prevent[ing] Plaintiffs from purchasing property from third parties, developing and enhancing the value of property, and realizing economic gain from selling property to third parties at a profit").  Plaintiffs cannot evade the effects of *res judicata* merely by asserting new legal theories based on the same transactions and alleged discriminatory conduct underlying the Prior Action.

Similarly, Plaintiffs' claims relying on the December 2017 stop work order are also barred by res judicata because those incidents could have been raised by amendment of the complaint prior to dismissal in the Prior Action.[4]  *See Snyder v. Yonkers Pub. Sch. Dist.*, 315 F. Supp. 2d 499, 502 (S.D.N.Y. 2004) (plaintiff's Title VII claim was precluded by res judicata, even though she had not received a right to sue letter at the time she filed the first suit because she received the letter before the first suit was dismissed and should have sought to amend the complaint).

In sum, Plaintiffs either did raise, or could have raised, all of the claims here in the Prior Action; accordingly, this action is barred by *res judicata* and should be dismissed with prejudice.

---

[4] Indeed, the district court acknowledged as much when she denying Plaintiffs' motion to reopen.  *See* Ex. H at *19 n.4 (describing events which allegedly occurred in December 2017: "these events occurred before the motion to dismiss was granted, Plaintiff was aware of them and they are thus not newly discovered.").

9

## II.     Plaintiffs Fail to State an Equal Protection Claim

### A.  The Second Amended Complaint Fails to State a Selective Enforcement Claim

Even without the *res judicata* bar, Plaintiffs' religious discrimination claims fail.  To prevail on a §1983 claim that a government agent has violated the Equal Protection Clause by selectively enforcing a facially neutral law against the plaintiff, the plaintiff must show that "'(1) the [plaintiff], compared with others similarly situated, was selectively treated; and (2) that such selective treatment was based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or bad faith intent to injure a person.'"  *Lisa's Party City, Inc. v. Town of Henrietta*, 185 F.3d 12, 16 (2d Cir. 1999) (citation omitted); *LeClair v. Saunders*, 627 F.2d 606, 609-10 (2d Cir. 1980).

Under the first prong of the analysis, the plaintiff must identify a comparator who was "similarly situated in all material respects" to the plaintiff and yet was treated differently by the defendant.  *Hu v. City of New York*, 927 F.3d 81, 96 (2d Cir. 2019).  In doing so, the plaintiff cannot rely on similarities between him or her and a comparator that exist at "a high level of generality," *New York Pet Welfare Assn. v. City of New York*, 143 F. Supp. 3d 50, 64-65 (E.D.N.Y. 2015), but must instead show similarity to the comparator "with respect to the specific incident or incidents that are alleged to be examples of differential treatment." *Missere v. Gross*, 826 F. Supp. 2d 542, 561 (S.D.N.Y. 2011).  To establish disparate treatment, the plaintiff must show not only that the defendant did not enforce the pertinent law against a comparator, but also that the defendant was aware of the comparator's violations.  *LaTrieste Restaurant v. Village of Port Chester*, 188 F.3d 65, 69-70 (2d Cir. 1999); *Tarantino v. City of Hornell*, 615 F. Supp. 2d 102, 114 (W.D.N.Y. 2009).  Additionally, the defendant's use of a stray comment demeaning the plaintiff, while unfortunate, does not suffice to show selective enforcement based on animus or the

10

plaintiff's group membership.  *See, e.g., Rodriguez v. Margotta,* 71 F. Supp. 2d 289, 296 (S.D.N.Y. 1999); *Lieberman v. City of Rochester*, 2011 U.S. Dist. LEXIS 46295, *9-14 (S.D.N.Y. Apr. 29, 2011) (use of derogatory names during arrest was not indicative of discriminatory enforcement).

Plaintiffs' selective enforcement claim should be dismissed because Plaintiffs fail to set forth non-conclusory allegations of fact that, if true, would demonstrate there was a similarly situated, non-Jewish property owner in the Village who received more favorable treatment.  In the SAC, Plaintiffs purportedly identify the following comparators: (1) the prior owner of 22 High Mountain; (2) unidentified owners of "neighboring" properties; and (3) a neighbor who erected pillars without a permit.  Ex. A ¶¶67, 78, 122-123.  But those alleged comparators are not similarly situated to Plaintiffs in all material respects.  Indeed, in the Prior Action, the district court concluded that identical allegations were insufficient to allege similarly-situated comparators.  *See* Ex. G at ¶¶80, 82, 106 *and* Ex. H at *21 ("Despite all of the newly discovered evidence that Plaintiffs proffer, they still have not identified any similarly situated comparators or any substantial burden on their free exercise of religion.").

First, the SAC alleges that, with respect to the CO requirements and debt collection activities, the prior owner of 22 High Mountain was not similarly situated to Plaintiffs in all material respects.  The SAC does not allege that the prior owner ever applied for a CO, much less that he applied for and received one after he had incurred the $6,379.34 debt.  Ex. A ¶¶ 67-69.  By contrast, the SAC alleges that Plaintiffs did apply for a CO, and did so after the debt had been incurred and overdue.  *Id*. at ¶64.  Thus, there is no allegation that the Village treated Plaintiffs differently than any similarly-situated property owner who sought a CO on a property with an unpaid debt.  Regarding actual collection of debt, the Village treated Plaintiffs and the prior owner identically and did not collect the debt from either of them.  Ex. A ¶¶67 86.  Accordingly, Plaintiffs

11

and the prior owner were not similarly situated or subject to disparate treatment.

The SAC also fails to adequately allege that neighboring property owners were similarly situated to Plaintiffs and yet received more favorable treatment with respect to enforcement of grading requirements.  The SAC accuses the Village of imposing unique burdens on Plaintiffs compared to neighboring property owners by requiring Plaintiffs to post a bond, verify their authorization to use a surveyor's drawings, test fill, and pay the application fee.  Ex. A ¶¶75-81.  However, while the SAC contains the conclusory allegation that "[t]hese conditions were not imposed on the similarly sloped and neighboring properties," Plaintiffs do not allege that any other property owners actually applied for grading permits and received them without meeting the requirements imposed on Plaintiffs.  D.E. #99 ¶78.  The SAC also fails to allege that the other property owners were similarly situated in all material respects regarding the Village Code's requirements for a grading permit.[5]  Thus, Plaintiffs fail to allege that the Village granted such permits to similarly situated properties on more favorable terms than those offered to Plaintiffs.

While Plaintiffs complain about being asked to acknowledge responsibility for the roads connecting to their property, Plaintiffs fail to identify any similarly-situated property owner who also owned property connected to the same type of road and did not have to sign such an agreement to get a CO.  Plaintiffs' vague allegation regarding an unnamed "developer in a separate part of Pomona" who "failed to complete roads adjoining his properties and defaulted on his bond," Ex. A ¶104, is clearly inadequate.  Plaintiffs fail to identify the other developer, the properties, or the

---

[5] Plaintiffs also fail to allege other facts necessary to determine whether neighboring properties were similarly situated regarding the Village Code grading requirements, including what documents, if any, were submitted in support of grading permits, the specific mix of slope types which would have to be addressed during the application process; and whether they proposed the same type of fill.  *See* Village Code § 119-1 (different requirements based on degree of steep sloping on a property); Village Code § 119-2(A) (Planning Board approval for steep slopes Village Code § 119-5(B) (application requirements); Village Code § 119-5(C) (fill and soil quality testing); Village Code § 119-6 (fees) ; Education Law §§ 7209(1)-(2) (proof of surveyor's authorization).  Plaintiffs' mere conclusions that other properties are "similarly sloped" properties does not meet *Iqbal*'s pleading standard.  Moreover, the Village Code sections cited herein demonstrate that the Village acted properly with respect to grading requirements.

name of the roads at issue; thus, the allegations do not satisfy the pleading standards of *Iqbal*.[6]

Lastly, Plaintiffs cannot rest their claim on the December 2017 SWO as there are no allegations regarding the type of work performed by Manes on his driveway or whether it was comparable to the neighbor's erection of pillars. Ex. A ¶¶117-123.

Accordingly, the SAC fails to allege similarly situated comparators or differential treatment and Plaintiffs' selective enforcement claim must be dismissed. *See Panzella v. City of Newburgh*, 231 F. Supp. 3d 1, 8-10 (S.D.N.Y. 2017) (collecting cases dismissing equal protection claims for lack of comparators); *See Snyder v. Pugliese*, 144 Fed. Appx. 174, 175 (2d Cir. Aug. 15, 2015) (failure to "specifically allege any treatment of themselves that was actually disparate from the purportedly similarly situated group of individuals residing on the same street.").

### B. Plaintiffs Cannot Proceed under *Pyke v. Cuomo*

In their motion to reopen the Prior Action, Plaintiffs argued that they could proceed with an Equal Protection claim without alleging different treatment of similarly situated comparators under *Pyke v. Cuomo*, 258 F.3d 107 (2d Cir. 2001). Any claim under *Pyke* is barred by *res judicata* because it arises from the same underlying transactions alleged in the Prior Action and there is no reason it could not have been raised prior to dismissal of that case. But, even if not barred, Plaintiffs' claims would still have to be dismissed as *Pyke* should not be applied here.

In *Pyke*, the Second Circuit recognized that, in rare circumstances, a plaintiff can establish an equal protection violation based on compelling evidence of intentional discrimination without alleging similar comparators. *See Pyke*, 258 F.3d at 109-110; *Rodriguez v. Clinton*, 357 Fed. Appx. 355, 357 (2d Cir. 2009) (acknowledging theory in passing). The *Pyke* plaintiffs alleged a failure to provide police protection on the Mohawk Indian reservation despite escalating violence because

---

[6] Notably, Plaintiffs do not allege that they actually signed the agreement or that the Village revoked or attempted to revoke their CO as a consequence of any failure to sign the agreement.

13

the plaintiffs were Native American.  *Pyke*, 258 F.3d at 108.  The defendants argued, in part, that they did not send in the police "because the Indian tribe exercises a considerable measure of self-governance on the reservation[.]"  *Id*.  In excusing the plaintiffs from identifying similar comparators, the Second Circuit noted "[i]t would be difficult, if not impossible, to find other individuals whose situation is similar to Native Americans living on a reservation and exercising a substantial measure of self-government independent of New York State."  *Id*. at 109.  Such circumstances are not present here.

Notably, *Pyke*, was not a selective enforcement case.  *Cf. Golodner v. Martinez*, 2017 U.S. Dist. LEXIS 210409, at *11 (D. Conn. Dec. 21, 2017) ("Plaintiffs pursuing denial of protective services claims 'are not required to plead similarly situated comparators.'").  Where, as here, the plaintiff challenges fundamentally discretionary law enforcement decisions, the plaintiff's claim should be analyzed under a selective enforcement theory, which requires a showing of differential treatment of a similar comparator to support to an inference of discrimination.  *See Muhammad v. Maduekwe*, 2016 U.S. Dist. LEXIS 25826, *26 (S.D.N.Y. Feb. 29, 2016) (refusing to apply *Pyke* "outside the narrow confines" of the court's holding); *Barua v. City of New York*, 2016 U.S. Dist. LEXIS 179610, *33-34 (Dec. 28, 2016); *see also Pyke*, 258 F.3d at 109.

Plaintiffs' claims here, fall within the selective enforcement rubric.  The crux of Plaintiffs' allegations—at least insofar as they pertain to the defendants' treatment of Plaintiffs— is that Village employees' decisions as to whether to charge unpaid fees, grant a grading permit, or issue a stop work order were unfavorable in comparison to the treatment accorded to unspecified other people.  Accordingly, Plaintiffs should be required to plead and prove the comparator and disparate treatment requirements.  *See Schwasnick v. Fields*, 2010 U.S. Dist. LEXIS 65958, *14-15

14

(E.D.N.Y. Jun. 30, 2010) ("Zoning law enforcement is a 'classic example' of discretionary behavior that does not give rise to a 'class of one'" equal protection claim).

Moreover, unlike *Pyke*, there is nothing unique about the alleged conduct here that would prevent Plaintiffs from identifying similarly situated comparators. Indeed, in recent cases with analogous allegations, the Second Circuit required allegations of similarly-situated comparators to sustain an Equal Protection Claim. *See Hu*, 927 F.3d at 101 (to proceed on claim that building inspector issued violations and stop work orders to Asian-American construction company in violation of Equal Protection Clause, "a plaintiff must specify at least one instance in which he was treated differently from another similarly situated"); *Hang Hsin v. City of New York*, 779 Fed. Appx. 12 (2d Cir. June 13, 2019) (affirming dismissal of Asian-American property developers' Equal Protection claims for failure to identify comparators).

Even under a *Pyke* theory, Plaintiffs fail to adequately allege discriminatory intent. To satisfy this discriminatory intent element, the plaintiff must plead specific incidents in which the government officials applied a facially neutral law to the plaintiff precisely because of the plaintiff's protected characteristic. *See Rosario v. Town of Mt. Kisco*, 2018 U.S. Dist. LEXIS 80843, *23, 25-26 (S.D.N.Y. May 11, 2018) (dismissing claim that town failed to enforce housing regulations in buildings occupied by immigrants because it was based on "naked assertions"). That is, the government actor must have possessed a "[d]iscriminatory purpose," which "implies more than intent as volition or intent as awareness of consequences" and instead "implies that the decisionmaker[s] . . . selected or reaffirmed a particular course of action at least in part 'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Hayden v. Paterson*, 594 F.3d 150, 163 (2d Cir. 2010) (internal citations and quotation marks omitted).

15

Merely alleging that community members believed there was a discriminatory bias or that a vaguely defined culture of discrimination existed in the local government is not enough.  *See Weinberg v. Vill. of Clayton*, 2018 U.S. Dist. LEXIS 187640, *6 (N.D.N.Y. Nov. 2, 2018) ("the Court cannot infer antigay animus based on speculative opinions of community members"); *Amaker v. Schiraldi*, 2017 U.S. Dist. LEXIS 166294, *23-24 (E.D.N.Y. Sept. 29, 2017) (allegations that defendants "systematically discriminated against black prisoners" and "general claims of disparity do not plausibly show that any of the State Defendants named in this suit held discriminatory intent in their actions against Plaintiff."); *Roman v. Velleca*, 2012 U.S. Dist. LEXIS 136946, *23-24 (D. Conn. Sept. 25, 2012) (allegation that defendant "had a history of discriminatory conduct toward minority and female employees," was inadequate to allege discriminatory purpose "in this instance").  Additionally, comments which do not clearly reference the protected class to which the plaintiff belongs or which are made by officials other than the one enforcing the law against the plaintiff cannot support an inference of discriminatory purpose.  *See e.g. Weinstein v. City of New York*, 2019 U.S. Dist. LEXIS 53099 (S.D.N.Y. Mar. 28, 2019).

Here, Plaintiffs' allegations of intent consist largely of conclusory allegations of general animus toward Orthodox Jews attributed to Noreen Shea or allegations of discrimination in unrelated cases against the Village.  *See, e.g.*, DE#99 at ¶¶132-140, 155-157, 223-233; ¶¶145-154, 234-241.  But conclusory accusations of an anti-Semitic culture based on vague community opinion cannot constitute the requisite allegations of specific instances in which the Individual Defendants discriminated in their application of the Village Code to Plaintiffs based on religion.  *See Naumovski v. Norris*, 934 F.3d 200 (2d Cir. 2019); *Buckner v. Cnty. of Sullivan*, 2015 U.S. Dist. LEXIS 12642, *11-13 (S.D.N.Y. 2015).  Furthermore, Zummo's alleged admission that the Village imposed requirements on Plaintiffs that it did not impose on others (Ex. A ¶70) does not

16

support an inference that the Village took such action "'because of,' Plaintiffs' religion. *Hayden*, 594 F.3d at 163. Similarly, Ulman's purported "admissions" that "'certain residents' lives were made miserable" by the Village, (Ex. A ¶172), does not indicate that the "certain residents" were Orthodox Jews or that Plaintiff was among those residents. Thus, Plaintiffs have no *Pyke* claim.

## III.     Plaintiffs' Claims Based on the Denial of a Grading Permit Are Not Ripe

Plaintiffs' claims based on alleged denial of a grading permit are also subject to dismissal because they are not ripe for review. There is no allegation that Plaintiffs ever submitted a formal application for a permit. *See* Village Code § 119-4 (Planning Board is the approving authority for applications involving a "very steep slope or extremely steep slope"), § 119-5;[7] *Cent. UTA of Monsey v. Village of Airmont,* 2020 U.S. Dist. LEXIS 13154 at *22-23 (S.D.N.Y. Jan 23, 2020) (dismissing claim based on informal application because plaintiff never submitted a formal site plan application). The only exception to a final land use decision is where pursuit before the applicable review board would be "futile." *Id*. at *23. "Futility" is a "high standard" that "must be interpreted narrowly" and "does not discharge . . . an owner's obligation to file one meaningful development proposal." *Id*. at 23-24. There are no allegations in the SAC from which the Court could infer that a formal application to the Village Planning Board would have been futile.

## IV.     Plaintiffs Fail to Allege a Substantial Burden on their Exercise of Religion

First, for the reasons stated above, any Free Exercise claim is barred by *res judicata*. Second, Plaintiffs' Free Exercise claim fails because Plaintiffs do not allege a substantial burden on their religious practice. "The Free Exercise Clause of the First Amendment embraces two concepts: 'freedom to believe and freedom to act' on one's beliefs." *Skoros v. City of New York*, 437 F.3d 1, 39 (2d Cir. 2006). "In order to establish a free exercise claim, 'it is necessary . . . for

---

[7] None of the defendants are members of the Planning Board.

one to show the coercive effect of the enactment as it operates against him in the practice of his religion." *Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 63 (2d. Cir. 2001). A plaintiff must allege the defendants' conduct was targeting plaintiff's religious practices. *Skoros*, 437 F.3d at 39. "Absent some demonstration that the purpose of the defendants' challenged actions was to impugn . . . or to restrict their religious practices . . . a Free Exercise claim will be sustained only if the government has placed a substantial burden on the observation of a central religious belief without a compelling governmental interest justifying the burden." *Newdow v. United States*, 2013 U.S. Dist. LEXIS 128367, *10-11 (S.D.N.Y. Sept. 9, 2013) (internal quotation marks and citation omitted), *aff'd sub nom*, *Newdow v. Peterson*, 753 F.3d 105 (2d Cir. 2014), *cert. denied* 574 U.S. 1079 (2015). "A substantial burden exists where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Newdow*, 753 F.3d at 109 (citation omitted). Enforcement of a generally applicable rule or law that incidentally burdens religious practice is not a violation of the Free Exercise Clause where there is rational basis for the enforcement and the incidental burden is not substantial. *Id.* (holding that being required to carry currency reading "In God We Trust" was not a substantial burden on the plaintiffs' religious beliefs).

Under the heading "Burdens Preventing Free Exercise of Religion," Plaintiffs allege four purported burdens on free exercise: (1) "preventing the establishment of synagogues"; (2) harassing Orthodox Jews who used their residences to host prayer groups; (3) "harass[ing] Orthodox Jewish worshippers by discriminatorily issuing tickets; and (4) preventing the establishment of a *mikveh* or ritual bath. Ex. A ¶¶8, 260, ¶¶259-282. But these allegations do not identify any law whose purpose is the suppression of religion or any substantial burden on the exercise of Plaintiff's practice of religion.

18

First, §130-10.G of the Village Code applies a 3-acre requirement to all "houses of worship," not just synagogues.  Ex. A at ¶261-262.  Moreover, §130-10.G was last amended in 2001,[8] long before Plaintiffs claim that Orthodox Jews were moving to Pomona, Ex. A at ¶153, and before Yagel became Mayor, *id*. at ¶19.  Plaintiffs' allegation that §130-10.G was enacted "with discriminatory animus against Orthodox Jews" is conclusory and must be disregarded.  Moreover, Plaintiffs do not allege that they seek to build a synagogue on their property or that the Village has prevented them from attending religious services.

Instead, Plaintiffs include a single allegation that another resident attempted to build a synagogue and that an unnamed "Defendant" described it in derogatory terms.  Ex. A ¶263.  Plaintiffs cannot plausibly allege that no synagogue could be built anywhere in the Village, nor do Plaintiffs include adequate allegations to infer that the Individual Defendants denied any applications by others for a special use permit pursuant to § 130-10.G for discriminatory reasons., nor would Plaintiffs have standing to raise such a claim.  Accordingly, Plaintiffs' assertion regarding the absence of a synagogue in the Village fails to allege a substantial burden on their religious practice.  *Dizak v. Hawks*, 2015 U.S. Dist. LEXIS 176283, at *14-15 (N.D.N.Y. Dec. 9, 2015) (dismissing free exercise claim where the complaint "contain[ed] nothing more than vague accusations that Plaintiff could not practice his religion without dates, times, or facts establishing how he was burdened."); *McLeod v. Williams*, 2020 U.S. Dist. LEXIS 85944, at *13 (S.D.N.Y. May 15, 2020).

Second, Plaintiffs' conclusory allegations regarding "harassment" of the owners of homes used for prayer groups or "ticketing" of individuals attending prayer group fail to state a claim.  The SAC does not contain any non-conclusory allegations that (1) Plaintiffs were ever subjected

---

[8] *See* https://ecode360.com/12718740.

to harassment or ticketing, or (2) Plaintiffs' ability to practice their religion was affected, let alone substantially burdened, by any alleged harassment. Ex. A ¶¶265-272. Indeed, Plaintiffs do not identify anyone who allegedly received a "ticket" for attending religious services. Ex. A ¶272. Thus, Plaintiffs fail to allege that the applicable zoning codes were enacted to restrict religious practices or that their religious practice has been substantially burdened by application of the zoning laws. *See Indig v. Pomona*, 2019 U.S. Dist. LEXIS 200934, *23 (2019 Nov. 18, 2019).

Finally, Plaintiffs' allegations concerning prevention of a mikveh are conclusory, unripe, and inadequate to state a claim. Plaintiffs allege only that unnamed "Orthodox Jewish residents of Pomona conducted preliminary inquiries into the possibility of building a *mikveh* in Pomona," and that certain defendants did not want a *mikveh* in Pomona. Ex. A ¶276. There is no allegation that any resident attempted to build a mikveh or applied for a permit to build a mikveh or that any Individual Defendants took any action to prevent a mikveh. DE #99 ¶¶273-282. Plaintiffs' allegation that the absence of a mikveh in Pomona "has burdened and hindered the religious observance of Plaintiff Manes" is conclusory and not traceable to any action by the Individual Defendants. Ex. A ¶282. Similar to Plaintiffs' complaint regarding the absence of a synagogue, a municipality is not required to provide a *mikveh*, or any other religious infrastructure that Plaintiffs deem beneficial to the practice of a particular religion. *See Skoros*, 437 F.3d at 39 ("no person may 'require the Government <u>itself</u> to behave in ways that the individual believes will further his or her spiritual development or that of his or her family"). The mere absence of such infrastructure is not a violation of the Free Exercise Clause.

To the extent the Plaintiffs' Free Exercise claim arises from the same alleged acts forming the basis for Plaintiffs' Equal Protection claim (denial of a CO, grading permit requirements, acknowledgement of a private road, etc.), these allegations do not state any burden on religious

exercise.  *See Indig*, 2019 U.S. Dist. LEXIS 200934, *23.

**V.      Plaintiffs Fail to State a Claim under RLUIPA**

Plaintiffs' claims under RLUIPA are misplaced:  this is not a case about religious land use.

The SAC asserts four claims pursuant to RLUIPA (counts IV through VII).  Initially, all of these

claims are barred by *res judicata* for the reasons stated above.  Second, even if they were not barred

as res judicata, they would still fail as Plaintiffs have not alleged the elements of an RLUIPA claim.

**A.   Plaintiffs' Have Not Alleged a "Substantial Burden" under RLUIPA**

Section (A)(1) of RLUIPA provides:

**(1)** General rule. No government shall impose or implement a land use regulation
in a manner that imposes a substantial burden on the religious exercise of a person,
including a religious assembly or institution, unless the government demonstrates
that imposition of the burden on that person, assembly, or institution—

**(A)** is in furtherance of a compelling governmental interest; and

**(B)** is the least restrictive means of furthering that compelling governmental
interest.

42 U.S.C. §2000cc(a)(1).  As explained in Part IV above, Plaintiffs have not alleged a substantial

burden on their religious exercise.  Accordingly, the SAC also fails to state a claim under §

2000cc(a)(1).  *See McLeod v. Williams*, 2020 U.S. Dist. LEXIS 85944, *10 (S.D.N.Y. May 15,

2020) ("substantial burden" is "identical" under Free Exercise Clause and RLUIPA); *Roman*

*Catholic Diocese of Rockville Ctr. v. Inc. Vill. of Old Westbury*, 2012 U.S. Dist. LEXIS 56694, at

*29 (E.D.N.Y. Apr. 23, 2012) (citing *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338,

348 (2d Cir. 2007) (observing that denial of a permit to construct a headmaster's residence is not

a substantial burden on the practice of religion under RLUIPA).

**B.   Plaintiffs Fail to State a Claim under RLUIPA § 2000cc(b)**

Unlike §2000cc(a), which addresses a burden on a "*person*, assembly, or institution,"

§2000cc(b) concerns discrimination with respect to land use regulations against "a religious

21

assembly or institution" only.  Neither Plaintiff Manes nor his real estate development company TAL Properties is a "religious assembly or institution," thus Plaintiffs cannot make out a claim under § 2000cc(b).  *See Chabad Lubavitch of Litchfield Cty., Inc. v. Borough of Litchfield*, 2016 U.S. Dist. LEXIS 10491, at *92-93 (D. Conn. Jan. 27, 2016); Ex. A ¶¶16-17.

To the extent Plaintiffs' RLUIPA claims under §2000cc(b) are based on the alleged application of land use regulations to property owned by others, Plaintiffs do not have standing to bring such a claim.  *See* Ex. A ¶¶259-282.  Both subsection (a) and (b) of RLUIPA apply to "land use regulations" which is defined as "a zoning or land-marking law, or the application of such a law, that limits or restricts a claimant's use or development of land . . . *if the claimant has an ownership, leasehold, easement, servitude, or other property interest in the regulated land or a contract or option to acquire such an interest*."  42 U.S.C. § 2000cc-5(5) (emphasis added); *see Chabad Lubavitch of Litchfield Cty., Inc.*, 2016 U.S. Dist. LEXIS 10491, at *89-90.

Moreover, for the reasons stated in Part IV, the SAC does not contain any plausible, non-conclusory allegations that the Individual Defendants imposed or implemented a land use regulation (1) that treats a religious assembly or institution on less than equal terms with any nonreligious assembly or institution or (2) that discriminates against any religious assembly or institution or (3) that excludes or limits religious assemblies within the jurisdiction.

## VI.    The Court Should Dismiss the Tortious Interference Claim

To the extent the SAC alleges tortious interference occurring prior to dismissal of the Prior Action, the claim is barred by *res judicata*.  To the extent the conduct arose after the dismissal of the Prior Action, the court should decline to exercise jurisdiction over the claim, as all of the federal claims are subject to dismissal.

Moreover, the SAC fails to allege tortious interference.  Any claim for tortious interference with existing contracts would fail because Plaintiffs do not allege any existing contracts.  *See White Plains Coat & Apron Co. v. Cintas Corp.*, 460 F.3d 281, 285 (2d Cir. 2006).  Any claim for tortious interference with prospective economic advantage would fail because the only business relationship alleged by Plaintiffs is the negotiation with Ms. Chernikov for the purchase of her property, (Ex. A ¶¶128-129) and Plaintiffs do not plausibly allege that Ms. Ulman interfered in that negotiation via "wrongful means."  *Friedman v. Coldwater Creek, Inc.*, 551 F. Supp. 2d 164, 169-70 (S.D.N.Y. 2008), *aff'd* 321 Fed. Appx. 58 (2d Cir. 2009).

## VII.    Plaintiffs Fail to State an Unconstitutional Conditions Claim

In the context of land use, the unconstitutional conditions (or exactions) doctrine holds that the government may not force a landowner to accept conditions on the use of the owner's property that the government could not impose directly and unilaterally.  *See Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 612 (2013).  "[A] unit of government may not condition the approval of a land-use permit on the owner's relinquishment of a portion of his property unless there is a 'nexus' and 'rough proportionality' between the government's demand and the effects of the propose land use."  *Id.* (citing *Nollan v. California Coastal Comm'n*, 483 U.S. 825 (1987) and *Dolan v. City of Tigard*, 512 U.S. 374 (1994)).

While the SAC adds a claim for unconstitutional conditions, it is not clear what allegations form the basis for this claim.  Ex. A ¶¶344-49. To the extent the claim is based on the alleged demand for payment of the $6300 unpaid debt prior to issuance of the CO, or the conditions recommended for a grading permit, the claim is barred by the doctrine of *res judicata*, as it could have been raised in the Prior Action.  Moreover, the requirement that unpaid fees related to a property be satisfied prior to issuance of CO, and the precautions for steep slopes contained in the

23

Village Code have a nexus and rough proportionality to the proposed use of the property; thus the SAC fails to state a claim for an unconstitutional condition. There are no other allegations that could form the basis for an unconstitutional conditions claim against the Individual Defendants.

## VIII.  The SAC Fails to Allege Personal Involvement by Fran Arsa Artha or Leon Harris

Personal participation of a defendant is a prerequisite to liability under Plaintiffs' federal and state law claims. *See Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Amaker v. Lee*, 2019 U.S. Dist. LEXIS 75146, *15 (S.D.N.Y. May 3, 2019); *Levantino v. Skala*, 56 F. Supp. 3d 191, 207 (E.D.N.Y. 2014). After Plaintiffs amended their complaint in this action to add Ms. Arsa Artha as a defendant, counsel notified them in the pre-motion letter that they failed to include a single allegation of wrongful conduct by Ms. Arsa Artha in the body of the amended complaint. In response, Plaintiffs asserted they would amend again to add "additional specific allegations pertaining to Ms. Arsa Artha and the other defendants most recently added." However, the SAC still does not contain any allegations of personal involvement by Ms. Arsa Artha.

Instead, the SAC contains general allegations that Ms. Arsa Artha "delayed service" to Orthodox Jewish residents. Ex. A at ¶¶132, 133. But the SAC does not allege any instances in which Arsa Artha allegedly delayed services to Plaintiffs or any injury to Plaintiffs due to any alleged intentional delay. *Id.* Allegations that Ms. Arsa Artha made derogatory comments about Orthodox Jewish residents are not actionable. Ex. A ¶134, 183-184.

Plaintiffs also added Leon Harris, former Deputy Mayor of Pomona, as a defendant in the amended complaint; however, the allegations against Mr. Harris are insufficient to state a plausible claim of personal involvement in any alleged federal or state law violations.[9] There is no allegation

---

[9] The entirety of the allegations against Mr. Harris are as follows:
- Conclusory allegations that Harris participated in discrimination against Orthodox Jews, (Ex. A ¶¶5, 8);

that Harris was involved in any specific action or incident involving Plaintiffs.  Nor is there any specific, non-conclusory allegation that Harris improperly directed the issuance of a code violation against Plaintiffs or any other Village resident.

## IX.   The Individual Defendants are Entitled to Qualified Immunity

Even if Plaintiffs adequately alleged a claim, the Individual Defendants would be entitled to qualified immunity.  "Qualified immunity shields a public official from civil liability when his conduct 'does not violate a clearly established statutory or constitutional right.'"  *Bolden v. Village of Monticello,* 344 F. Supp.2d 407, 410 (S.D.N.Y. 2004) (cite omitted).  And, "the defendant may enjoy qualified immunity if it was objectively reasonable for him to believe that his acts did not violate those [well-defined federal] rights."  *Danahy v. Buscaglia*, 134 F.3d 1185, 1190 (2d Cir. 1998) (citation omitted).  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Malley v. Briggs,* 475 U.S. 335, 341 (1986).  Here, the Individual Defendants engaged in objectively reasonable, fact-specific enforcement of the Village Code in determining that Plaintiffs were obligated to pay the debt on the property, comply with the necessary conditions and submissions for grading work, and maintain private roads. Consequently, the Individual Defendants are entitled to qualified immunity.

### Conclusion

For the reasons stated above, this Court should grant defendants' motion to dismiss pursuant to F.R.C.P. 12(b)(6) and 12(b)(1), and dismiss the SAC in its entirety.

---

- General allegations that when Harris received complaints from Village residents about potential code violations by Orthodox Jews, he passed those complaints on to the Building Inspector to investigate, including complaints about Orthodox Jewish prayer meetings, (Ex. A ¶¶163, 268);
- Conclusory allegations that Harris "subjected that prayer group and others to much scrutiny and harassment" and "directed Defendant Zummo to 'violate' or ticket people walking to 'shul,'" (Ex. A ¶¶265, 272); and
- An irrelevant allegation that Harris refused to turn over a computer password to the incoming administration after leaving office, (Ex. A ¶254).

25

Dated:    White Plains, New York
            August 21, 2020

                              Respectfully submitted,

                              WILSON, ELSER, MOSKOWITZ,
                              EDELMAN & DICKER LLP
                              Attorneys for the Individual Defendants

                              Janine A. Mastellone
                              Eliza M. Scheibel
                              1133 Westchester Avenue
                              White Plains, NY  10604
                              (914) 323-7000
                              Our File No.  00295.12564